IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, **Plaintiff**, v. MATRICULATED SERVICES, LLC, Defendant/Third-Party Plaintiff, v. ADRIAN HOLDING, LLC, Defendant/Third-Party Defendant/Counter Claimant. | CIVIL ACTION NO.): 1:19-CV-202 (JUDGE KLEEH) |

### REPORT AND RECOMMENDATION, RECOMMENDING THAT COUNTER-CLAIMANT ADRIAN HOLDING, LLS'S MOTION [ECF NO. 135] FOR DEFAULT JUDGMENT BE GRANTED THAT DAMAGES IN THE AMOUNT OF $197,966.09 BE AWARDED

This matter is before the undersigned Magistrate Judge pursuant to a Referral Order [ECF No. 136] entered by the Hon. Thomas S. Kleeh, Chief United States District Judge. By the Referral Order, Judge Kleeh directed the undersigned Magistrate Judge to review Counter-Claimant Adrian Holding, LLC's ("Adrian Holding") pending motion [ECF No. 135] requesting that the Court enter default judgment against Defendant Matriculated Services, LLC ("Matriculated").

1

The undersigned convened a hearing, by videoconference, concerning the motion on February 14, 2023. Appearing at the hearing on behalf of Adrian were John Pizzo, Esq., counsel for Adrian Holding, and Kevin Adrian ("Mr. Adrian"), corporate representative of Adrian Holding. Matriculated did not appear through any counsel or corporate representative.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Norfolk Southern Railway Company commenced this action on November 1, 2019, when it filed its initial Complaint against Matriculated and others. [ECF No. 1]. Relevant to this Report and Recommendation, Adrian Holding ultimately filed its Amended Counterclaim against Matriculated on February 4, 2021. [ECF No. 52]. Adrian Holding alleged Matriculated's breach of contract as between those parties, and sought an unspecified amount of damages, costs, attorney's fees, and any other expenses arising from the alleged breach. Adrian Holding brought its claim for breach of contract pursuant to a lease agreement ("the Lease") dated December 12, 2014 [ECF No. 150-1] between the parties for the lease of a certain tract or parcel of real estate located at 255 South Plant Street, Morgantown, West Virginia ("the Premises"), situate in an area known as the Morgantown Industrial Park.

As for the factual allegations, Adrian Holding alleges that, under the Lease, Matriculated was obligated to maintain the Premises in good repair and condition. The Premises includes a structure which Adrian Holding describes as "the Warehouse building." Apparently, Matriculated was in the business of transporting silica sand for hydrofracking operations related to natural gas production, and utilized the Premises, especially the Warehouse building, in the course of that business. Adrian Holding alleges that Matriculated allowed the sand to accumulate in sizeable piles on the Premises, and ultimately did not remove the sand. Matriculated's failure to remove the sand resulted in the improper accumulation, migration, and impaction of sand – causing

problems with drainage and other issues on the Premises. Adrian Holding incurred costs in removing the sand. Adrian Holding also alleges that Matriculated allowed other debris and material to accumulate (e.g. oil, hydraulic fluid), which Matriculated likewise did not remove from the Premises, and for which Adrian Holding incurred costs to correct. Adrian Holding also complains of other failures to maintain the Premises, resulting in Adrian Holding incurring costs to remediate a range of other problems resulting from Matriculated's neglect.

On February 18, 2022, Matriculated timely filed its Answer [ECF No. 53] to the Amended Counterclaim. However, tragically, Matriculated's counsel later died in an automobile accident. The firm representing Matriculated was permitted to withdraw as counsel; the Court directed Matriculated to obtain new counsel and for new counsel to appear herein, and provided a deadline to do so. [ECF Nos. 63, 64, 67]. Matriculated failed to do so, and Adrian Holding filed a motion [ECF No. 89] on March 17, 2022 to strike Matriculated's Answer to the Amended Counterclaim and to enter default against Matriculated.

The presiding District Judge then entered a Referral Order [ECF No. 94] on March 21, 2022, directing the undersigned to address Adrian Holding's motion for default. [ECF No. 89]. The undersigned entered an Order to Show Cause [ECF No. 97] on March 23, 2022, by which Matriculated was ordered to show cause within 14 days why Adrian Holding's motion for default [ECF No. 89] should not be granted. On March 28, 2022, Matriculated's registered agent accepted service of the Order to Show Cause. [ECF No. 104]. However, Matriculated did not respond to the Order to Show Cause. Thus, the undersigned entered a Report and Recommendation [ECF No. 110] on April 18, 2022, recommending that Adrian Holding's motion [ECF No. 89] to strike Matriculated's Answer and to enter default be granted. The Report and Recommendation provided that objections thereto must be lodged within 14 days. Matriculated's registered agent accepted

3

service of the Report and Recommendation on April 22, 2022. [ECF No. 111]. Matriculated did not lodge any such objection.

By Order [ECF No. 119] dated July 15, 2022, the presiding District Judge adopted the undersigned's Report and Recommendation [ECF No. 110] and granted Adrian Holding's motion [ECF No. 89] for entry of default. The Clerk of the Court entered default against Matriculated on that same date, July 15, 2022. [ECF No. 122]. Then, on January 11, 2023, Adrian Holding filed a motion [ECF No. 135] for entry of <u>default judgment</u> against Matriculated, pursuant to Fed. R. Civ. P. 55(b)(2), which is the subject of the instant Report and Recommendation. The undersigned ultimately convened a hearing on the motion [ECF No. 135] on February 14, 2023, as noted above, at which appeared the representatives of Adrian Holding as previously summarized, and at which no representative of Matriculated appeared.

## II. SUMMARY OF HEARING OF FEBRUARY 14, 2023, INCLUDING ADRIAN HOLDING'S PRESENTATION REGARDING DAMAGES

At the hearing before the undersigned, Adrian Holding's counsel called Mr. Adrian to testify. Mr. Adrian also is the affiant who signed the sworn statement [ECF No. 135-1] in support of Adrian Holding's motion [ECF No. 135] for default judgment which is the subject of the instant Report and Recommendation. Mr. Adrian explained that he was the principal of Adrian Holding who executed the Lease on Adrian Holding's behalf. Mr. Adrian also explained his familiarity and involvement with overall operations the Morgantown Industrial Park, and the issues which arose during the time of Matriculated's occupancy of the Premises.

In the course of Mr. Adrian's testimony, the Court received three exhibits into evidence, labeled Adrian Holding's Exhibit 1, Adrian Holding's Exhibit 2, and Adrian Holding's Exhibit 3, respectively. [ECF Nos. 150-1, 150-2, 150-3]. Mr. Adrian explained that Adrian Holding's Exhibit 1 is the Lease itself, executed by Mr. Adrian and by an authorized representative of Matriculated.

4

Mr. Adrian explained that Adrian Holding's Exhibit 2 is a one-page spreadsheet describing the various remedial measures to rehabilitate the Premises which Adrian Holding undertook after Matriculated left the Premises, and costs associated with each such measure which has or will be taken. The spreadsheet includes a range of measures – for example, hauling 75 truckloads of sand away from the Premises; re-locating abandoned equipment; replacing gravel on the site, the removal of which was necessitated by removal of the sand; replacing damaged doors, lights, and the like; and cleaning, painting, and repairing specified items and areas, such as the HVAC system. Mr. Adrian explained that not all tasks listed on the spreadsheet have been completed, such that not all costs have yet been incurred. However, to the extent which a cost is associated with a task yet to be completed, that cost is based on a valid estimate obtained from a contractor or similar professional. For context, Mr. Adrian explained that such estimates on which Adrian Holding relies are somewhat dated, such that the actual cost, when incurred, conceivably could be greater.

As to Exhibit 2, Mr. Adrian explained one important detail: the line reflecting a cost of $6,250.00 ("Removal of Dust Pro System") should be stricken. Per Mr. Adrian, since generating Exhibit 2, Adrian Holding has completed that task in-house for a lesser sum of $1,200.00, as reflected in another line ("Man Hours"). Thus, the total amount claimed on Exhibit 2, that being $122,033.75, should be reduced by $6,250.00, for a revised total of $115,783.75.

Finally, Mr. Adrian explained that Adrian Holding's Exhibit 3 consists of a number of photographs which depict the sand piles left by Matriculated on the Premises. The photographs are provided to the Court for illustrative purposes.

In argument, Adrian Holding's counsel emphasized a number of provisions in the Lease (Adrian Holding Exhibit 1) upon which Adrian Holding relies for its claim for damages herein. For example, counsel pointed to Section 7.1 therein (requiring lessee's maintenance and repair of

5

the HVAC system), Section 7.2 (requiring lessee to remove garbage), Section 8.3 (requiring lessee to not compromise structural integrity or commit waste), Section 8.8 (requiring lessee to leave Premises in good repair upon vacating it), and Section 10.2 (requiring lessee to maintain Premises in good repair). For context, counsel and Mr. Adrian explained that Adrian Holding was not claiming amounts due for unpaid rent, as Matriculated had kept its rent payments current until it vacated the Premises.

Further, Adrian Holding's counsel reviewed the provision in the Lease by which Matriculated agreed to pay reasonable attorney's fees and costs incurred by Adrian Holding in certain litigation. [ECF No. 150-1, at 8-9]. The Court directed Adrian Holding's counsel to submit a verified summary of attorney's fees and costs incurred. Adrian Holding's counsel submitted such a summary, detailing attorney's fees and costs in the amount of $82,182.34. [ECF No. 153]. Thus, Adrian Holding seeks an entry of default judgment against Matriculated in the total amount of $197,966.09.

### III. ANALYSIS AND FINDINGS

In review of Adrian Holding's motion for default judgment [ECF No. 135] and affidavit in support [ECF No. 135-1], thereof, and in receiving Adrian Holding's testimony and argument at the hearing of February 14, 2023, the undersigned **FINDS** that entry of default judgment in Adrian Holding's favor against Matriculated, in the amount sought, is appropriate. As Adrian Holding rightly notes, the governing rule for entry of a default judgment in matters such as this where a "sum certain" is not at issue, provides in pertinent part:

> In all other cases, the party must apply to the court for a default judgment . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

    **(A)** conduct an accounting;
    **(B)** determine the amount of damages;
    **(C)** establish the truth of any allegation by evidence; or
    **(D)** investigate any other matter.

Fed. R. Civ. P. 55(b)(2). Put another way, then, the undersigned **FINDS** that Adrian Holding has substantiated the sum for which it seeks entry of default judgment against Matriculated.

  Adrian Holding's affidavit accompanying its motion, by which its representative explains the calculation of the damages claimed, is helpful to the inquiry under Fed. R. Civ. P. 55(b)(2). However, the undersigned's finding is aided materially by Adrian Holding's corresponding explanation of the damages claimed – by witness testimony and counsel argument – offered at the hearing before the undersigned on February 14, 2023. At this hearing, and as spread upon the record, Adrian Holding specified how Matriculated had certain responsibilities under the Lease. Then, Adrian Holding identified the particular damages alleged, and took pains to detail the costs that were (or will be) incurred in correcting those damages. Moreover, the amounts which Adrian Holding claims are entirely reasonable; indeed, it appears that Adrian Holding took measures to minimize those amounts, by, for example, performing certain remedial measures in-house rather than engaging a more expensive contractor.

  There is nothing of record to indicate that Matriculated did not enter into the Lease alleged or that the Lease provides differently than Adrian Holding argues. And nothing of record shows that Adrian Holding's calculations of damages are incorrect.

  Perhaps more to the point, Matriculated has presented no evidence or argument to the contrary of Adrian Holding's arguments, claims, and calculations. Despite multiple entreaties by the Court to retain counsel and appear, receipt of notices of proceedings herein, and opportunities to engage in the process, Matriculated has failed to appear and offer anything to the contrary. Nor, in the undersigned's own review of Adrian Holding's evidence and argument, and provisions at

law relied upon, does Adrian Holding appear to be incorrect in its claims for (and summary of) its damages. Thus, in view of Adrian Holding's evidence and argument in its own right, and lacking evidence and argument to the contrary, the undersigned **FINDS** that Adrian Holding has substantiated its claim for the damages as sought herein, including Adrian Holding's statement of reasonable attorney's fees and costs.

## IV. RECOMMENDATIONS AND CONCLUSION

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT** Adrian Holding's motion [ECF No. 135] for default judgment, and direct the Clerk of the Court to enter an order of default judgment by which the Court grants judgment for Adrian Holding, LLC against Defendant Matriculated Services, LLC for the amount of **$197,966.09 in damages (inclusive of reasonable attorney's fees and costs), plus post-judgment interest** under 28 U.S.C. § 1961, at the rate of interest established thereby, from the date of the Court's judgment order until the date judgment is paid.

Any party have fourteen (14) days (filing of objections) and then three days (mailing/service) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas Kleeh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of**

**appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, as well as to Matriculated Services, LLC c/o Registered Agent David M. Sutherland, 201 River Run, Queenstown, Maryland 21658 by certified mail, return receipt requested.

**DATED**:  February 23, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE